CLARISSA E. WARREN v. METRAH MAKELY.

*Evidence—Description in Deed for Land.*

1. Evidence of the value of a tract of land adjoining that retained by the donor in a deed of gift, is incompetent to show that the donor did not retain property fully sufficient and available to satisfy existing debts.

2. One hundred acres "lying in Currituck township near the head of Smith Creek, it being the eastermost portion of the farm purchased from my brother and known as the Russell land," is sufficiently described to identify the part cut off, as a distinct tract.

(*Black* v. *Sanders*, 1 Jones 67; *Credle* v. *Carrawan*, 64 N. C., 422; *Bell* v. *Herrington*, 3 Jones 320; *Wellons* v. *Jordan*, 83 N. C., 371; *Stewart* v. *Salmonds*, 74 N. C., 518, cited and approved.)

CIVIL ACTION to recover land tried at Fall Term, 1880, of HYDE Superior Court, before *Schenck, J.*

Judgment for plaintiff, appeal by defendant.

*Messrs. Gilliam & Gatling*, for plaintiff.
*Mr. Jas. E. Moore,* for defendant.

SMITH, C. J. The plaintiff asserts title to and seeks to recover from the defendant the possession of a tract of land, designated in her complaint as "lying in Currituck township and on Smith creek adjoining the lands of L. P. Fortescue, Zacheus Gibbs and John B. Fortescue, containing one hundred acres, more or less." In the answer the defendant admits that "he is in possession of the *land described in the complaint*," and avers that "he is the owner of *said land* in fee."

Upon the trial of the issue involving the plaintiff's title and right to recover, she introduced in evidence a deed of gift executed on April 26, 1870, by C. E. Slade, her aunt, conveying to her (subject to the reservation of the donor's life estate) for her natural life and with limitations in remainder to her child or children, a tract of land therein described in these words: "A piece or parcel of land lying and being in Currituck township and near the head of Smith Creek, it being the easternmost portion of the farm I purchased from my brother, John E. Fortescue, known as the Russell land, containing one hundred acres, including the buildings and the cleared land, bounded on the east by the land I purchased from Lewis B. Fortescue."

The defendant also derived title from the said C. E. Slade under a judgment rendered against her in 1864, and a sale under execution by the sheriff and his deed made in 1872 to the defendant for the premises, and he insisted that the voluntary conveyance to the plaintiff was fraudulent and void, for that, the donor did not at the execution thereof

retain property fully sufficient and available for the satisfaction of her then creditors, as required by the act of 1840.

Upon this inquiry and as a means of arriving at the value of the retained land, the defendant proposed to ask a witness the following question: What did the Porter Fortesque land, adjoining the lands of Mrs. Slade (the donor) sell for at execution sale a year or so before this sale? On objection the question was disallowed and the defendant excepts to the ruling.

The existence of the debt reduced to judgment before the making the deed of gift and subsequent insolvency of the donor, renders her deed *prima facie* fraudulent and void against the creditor seeking to subject the land to the payment of his debt, and equally so against the defendant purchasing under the execution issued to enforce it, unless at the time the debtor retained property, in the words of the act, "fully sufficient and available" for the satisfaction of her creditors, and the duty of proving this fact to sustain the conveyance devolved upon the plaintiff. *Black* v. *Sanders*, 1 Jones, 67; *Credle* v. *Carrawan*, 64 N. C., 422; Bump on Fraud. Conv., 286, and note citing numerous decisions in other states.

It must be then assumed that this necessary supporting proof had been offered by the plaintiff, and the rejected inquiry was intended in rebuttal and to reduce the estimated value of the retained land. The question is simple and absolute, unaccompanied with any suggestion that the two tracts possessed the same or similar qualities in soil, culture, location, or improvement, or possessed in common the elements that enter into the estimate of their respective values, or that supplementary proof would be produced that the price bid for one could in any degree measure the value of the other, or aid in putting an estimate upon it. As presented to us in the record and without any explanatory circumstances, the question was properly excluded as irrelevant and misleading.

It has been held in the court of appeals of New York, where the inquiry was as to the value of an ice-house, that proof of what another ice-house which the witness had caused to be built, cost him, was inadmissible. And again, that in ascertaining the value of a steamboat sunk by collision with the defendant's steamer, it was incompetent to show what another steamer like that of the plaintiff was worth. *Blanchard* v. *Steamboat Co.*, 59 N. Y., 300 ; *Gouge* v. *Roberts*, 53 N. Y., 619.

In *Bell* v. *Herrington*, 3 Jones, 320, the plaintiff sued for breach of a covenant to teach certain of his slaves " the ship-carpenter's and caulker's trade," and it was held to be incompetent for defendants to show that the slaves had been employed in their shipyard as other apprentices of the same experience and no distinction made between them, inasmuch as there was no proof, nor any offer to prove, that the other apprentices were properly instructed in the trade which the defendants covenanted to teach.

The objection to such testimony is obvious. It tends to raise a collateral issue and divert attention from the proper subject of inquiry before the jury. If the price at which one contiguous tract sold may be shown, so may the price or value of any others adjoining, and these may severally become the subject of contention and obscure the real point to be determined. The exception must be overruled.

The second exception is to the refusal of the court to declare, and so instruct the jury, that the deed to the plaintiff is upon its face too indefinite to convey title to the land in controversy. The objection is not directed, as we understand, to the sufficiency of the terms of description of the entire tract out of which is carved the one hundred acres awarded by the jury to the plaintiff, but to the part thus cut off, and to the inability of identifying it by the descriptive words of the deed. The court rightfully declined to decide, and to tell the jury, that from a simple inspection of

the instrument it was manifest that the one hundred acres could not be ascertained, as a distinct tract, from the terms used in describing it and therefore no title passed under the deed. The entire land is designated by its boundary lines as well as by a name, and for aught that can be seen is identified and well defined. The answer shows the defendant's knowledge of the land, claimed in the complaint, under a description much less definite than that contained in the deed, the sufficiency of which he lawfully recognizes in the defence set up. *Wellons* v. *Jordan,* 83 N. C., 371; 1 Tay. on Ev., § 292. If the larger tract be defined, it is apparent the area of one hundred acres can be cut off from its eastern part by a line running due north and south and intersecting its boundaries. Every part of this section will be more eastern than any part of the residue, and hence fulfills the requirement in the deed, that it shall be " the eastermost portion of the farm." This proposition is established in *Stewart* v. *Salmonds,* 74 N. C., 518, where language not dissimilar was employed in defining the separate section.

The objection to the form of the verdict as wanting in certainty in designating the recovered land, rests upon the same ground and must be disposed of in the same way. The defendant was not entitled to judgment upon the verdict, and his exception to the refusal of the court to render it is equally untenable. There is no error and judgment must be affirmed.

No error.                                        Affirmed.