Elizabeth D. ORTA, Trustee, Appellee,

v.

Sigfried SCHAFER and wife, Sadie N. Schafer, Leon I. Schafer and wife, Margaret H. Schafer, Appellants.

No. 8159.

United States Court of Appeals Fourth Circuit.

Argued Oct. 17, 1960.

Decided Dec. 6, 1960.

Franklin T. Dupree, Jr., and Walter Lee Horton, Jr., Raleigh, N. C., for appellants.

Charles F. Blanchard, Raleigh, N. C. (Louis J. Sagner, Baltimore, Md., on the brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and BARKSDALE, District Judge.

PER CURIAM.

This action was instituted by Elizabeth D. Orta, Trustee of Leon Irvin Schafer, bankrupt, against Sigfried Schafer and wife (hereinafter referred to as "Sig"), and Leon Irvin Schafer and wife (hereinafter referred to as "Leon"), for the purpose of having set aside and declared void as in fraud of creditors, a deed from Leon and wife to Sig dated May 15, 1953, conveying real estate in Raleigh, N. C. The case was tried with a jury, and the jury having answered the issues in favor of the plaintiff, judgment was entered setting aside the deed, and from this judgment defendants have prosecuted this appeal. There having been a jury verdict in her favor approved by the court, all conflicts in the testimony must be considered here as having been resolved in favor of Orta, Trustee, plaintiff below. In the light of this principle, the facts may be briefly stated as follows:

On January 1, 1946, Sig and Leon, father and son, formed a partnership under the name of "Sig Schafer & Son", to engage in the wholesale distribution of beer and wine in Raleigh. The partnership operated successfully until June 30, 1952, when the partnership was dis-

solved, Leon purchasing the interest of his father, Sig, at the agreed price, determined by audit, as $28,039.21. Payment was made by Leon giving his father a note of $25,000.00 payable in monthly instalments of $300.75, secured by a second deed of trust on the real estate here in controversy, then a partnership asset, subsidiary to a first deed of trust of $35,000.00 in favor of Durham Life Insurance Company, and $3,039.21 credited to Sig as due and owing on open account. Leon then continued to operate the business under the name of "Sig Schafer & Son" without notifying the creditors of the dissolution of the partnership nor filing such notice in the Clerk's office. The sign on the building and on the delivery trucks remained unchanged. Although Sig ceased to be active in the business after the dissolution of the partnership, he and his son, Leon, continued to have extensive and substantial financial dealings with each other. In early 1953, Leon, finding that the business was not prosperous, decided to discontinue it. He began to wind up its affairs, and by deed dated May 15, 1953, he and his wife conveyed the real estate here in controversy, it being the warehouse in which the business was conducted, back to Sig, and it is this conveyance which the district court set aside. The consideration for the conveyance was the assumption by Sig of the indebtedness to Durham Life Insurance Company then in the amount of $33,787.01, (which assumption, however, did not relieve Leon of his obligation to pay this indebtedness), the cancellation of the $25,000.00 note given by Leon to Sig at the time of the dissolution of the partnership, the balance due being then $23,108.80, and the cancellation of the balance due Sig on the open account, then in the amount of $750.47, a total consideration of $57,646.28. The warehouse was by far the most valuable asset of the business, and its fair market value was $64,141.60. At the time of this conveyance Leon was insolvent, being indebted to his creditors in the sum of $111,550.61, which even by his own books

exceeded his assets by $8,739.62. Certain creditors, at the time of this conveyance of the real estate here in question by Leon to Sig, were still creditors at the time of the filing of the involuntary petition in bankruptcy against Leon. At the time of the conveyance to him, Sig, the father, was aware that his son Leon was insolvent and unable to pay his creditors. After the conveyance of the most valuable asset of the business to his father, he has ever since remained unable to pay his creditors. As found by the jury, the conveyance of the real estate in question by Leon to Sig was with the intent to defraud his creditors and Sig participated in this fraudulent intent or had notice of it.

There is little, if any, difference between opposing counsel as to the law applicable to this case. Plaintiff trustee relied upon Section 70, sub. e of the Bankruptcy Act (11 U.S.C.A. § 110, sub. e), declaring any transfer null and void against the trustee which is fraudulent or voidable as to a creditor, by state law, and Section 39–15 of the North Carolina General Statutes declaring "to be utterly void" conveyances intended to delay, hinder and defraud creditors. Counsel for appellants cite and rely upon Aman v. Waller, 165 N.C. 224, 81 S.E. 162, 164, which states as the applicable principle:

"If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the *grantor,* participated in by the *grantee,* or of which he has notice, it is void."

The district court precisely followed this statement of the law in its charge to the jury, as follows:

"That raises two issues which the court is going to submit to you for your answer. The first is this: was the conveyance executed by Leon Irvin Schafer and wife, Margaret H. Schafer, to Sigfried Schafer, made with intent to defraud the creditors of Leon Irvin Schafer, as alleged in the complaint? The sec-

ond issue is: if so, did the grantee, Sigfried Schafer, participate in said fraudulent intent or have notice thereof?",

and, of course, further charged the jury that the burden of proof on each of these issues was on the plaintiff.

Appellants' real contentions are that the verdict was contrary to the weight of the evidence, that certain rulings of the court and incidents which occurred during the trial were prejudicial to them, and that the judge committed error in his charge.

■ Plaintiff called defendants Sig and Leon as adverse witnesses, and they testified extensively. It would serve no useful purpose to discuss the evidence in detail. Suffice it to say that a careful examination of the record convinces us that, although, of course, Sig and Leon denied any fraudulent intent, their evidence and the reasonable inferences to be drawn from it, together with the other evidence in the case, was ample to support the verdict.

■ Appellants' counsel complain that improper and prejudicial statements were made by plaintiff's counsel in the opening statement, although only one objection was made during the opening statement which was properly overruled. It is true that plaintiff's counsel referred in his opening statement to a Dun & Bradstreet report which was improper, as the statement was not introduced in evidence. However, references to this report were not prejudicial to defendants, and there was no objection made to these references. Besides, the court charged the jury that:

"The statement by counsel of what they expect to prove is not evidence. You will have to listen to the evidence and try the case only on the basis of the evidence the court admits and which will be competent at the time."

And it may be said in passing that the opening statement of defendants' counsel was by no means a model of fairness and propriety. Nor do we find any error in the rulings of the court on the admissibility of evidence. A careful consideration of the court's charge shows that it fully covered the case, and was eminently fair to both plaintiff and defendants. In short, we find no error was committed in the trial, and conclude that the judgment must be affirmed. Defendants' real complaint is that the jury accepted the theory of the plaintiff and found by their verdict that she had sustained her burden of proof

Affirmed.