JENNY C. TUTTLE v. BILLY E. TUTTLE AND SHIRLEY D. TUTTLE

No. 7721SC1047

(Filed 21 November 1978)

1. **Fraudulent Conveyances § 3.4— retaining sufficient property to pay debts—sufficiency of evidence**

    In an action to set aside a conveyance allegedly fraudulent as to creditors, the trial court did not err in denying defendants' motions for directed verdicts where the evidence tended to show that the male defendant had debts of $31,300 and assets of $34,500, that half of everything he had belonged to the female defendant, and that he had $20,000 in judgments against him, since the jury could have found from this evidence that, in transferring the property in question, the male defendant failed to retain sufficient assets to pay his then existing indebtedness.

2. **Fraudulent Conveyances § 3.4— voluntary conveyance—sufficiency of evidence**

    In an action to set aside a conveyance from defendant husband to himself and defendant wife as tenants by the entirety which was allegedly fraudulent as to creditors, evidence was sufficient to present a jury question as to whether the conveyance was voluntary where it tended to show that the deed had no excise stamps affixed thereto; the recited consideration was "Ten Dollars and other valuable considerations"; and defendant husband testified that he did not know whether $12,000 allegedly contributed by defendant wife came from her salary or from their business and that he did not apply money his wife gave him towards payments on the property in question.

3. **Fraudulent Conveyances § 3.4— fraudulent conveyance by husband—wife's knowledge—no directed verdict for wife**

    In an action to set aside a conveyance by defendant husband to himself and his wife as being allegedly fraudulent as to creditors, the trial court properly denied defendant wife's motion for a directed verdict where the evidence that defendant wife knew of defendant husband's support obligations to plaintiff, his arrearage and the lawsuit against him therefor, coupled with the relationship between defendants and the evidence that the conveyance was voluntary, was sufficient to submit the case to the jury.

4. **Fraudulent Conveyances § 3— lack of consideration—definition favorable to defendant**

    In an action to set aside a conveyance allegedly fraudulent as to creditors, the trial court's instruction pertaining to lack of consideration, "that is, if the grantee, or a person receiving the conveyance, gave nothing of value for it," was more favorable to defendants than the Supreme Court's definition of voluntary conveyance as one which "is not for value, *i.e.*, when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud."

**5. Fraudulent Conveyances § 3.2— valuable consideration—shifting burden of proof**

　　In an action to set aside a conveyance allegedly fraudulent as to creditors, the trial court properly instructed the jury that the burden of proof to show valuable consideration was on the plaintiff if the jury found that defendant husband retained sufficient other property to pay his debts but was on the defendants if the jury found that defendant husband did not retain sufficient other property to pay his debts.

**6. Fraudulent Conveyances § 3.3— defendant's debt to plaintiff at time of trial—failure to object to evidence**

　　In an action to set aside a conveyance allegedly fraudulent as to creditors, the trial court did not err in allowing plaintiff to testify concerning what defendant owed her at the time of the trial rather than at the time of the conveyance in question, since similar evidence had earlier been admitted without objection.

**7. Fraudulent Conveyances § 3.3— consent order showing checking account balance—order too remote in time—evidence properly excluded**

　　Trial court in an action to set aside an allegedly fraudulent conveyance did not err in excluding from evidence a consent order entered subsequent to the conveyance in question showing that defendant had a substantial amount of money in a checking account, since the order was too remote in time and would not have a logical tendency to prove that defendant, at the time of the conveyance made several months before entry of the order, had sufficient property available to satisfy his debts.

　　APPEAL by defendants from *Long, Judge.* Judgment entered 16 September 1977 in Superior Court, FORSYTH County. Heard in the Court of Appeals 22 September 1978.

　　Plaintiff Jenny C. Tuttle, former wife of defendant Billy E. Tuttle, brought this action to set aside a conveyance allegedly fraudulent as to creditors. The conveyance was made by Billy Tuttle to himself and his second wife, defendant Shirley D. Tuttle, as tenants by the entirety.

　　Plaintiff presented evidence tending to show that: she and Billy Tuttle were divorced in November 1975, after 25 years of marriage; in September 1974, the parties entered into a separation agreement whereby Billy Tuttle was to pay plaintiff $700 per month alimony and $500 per month child support; he paid this amount until March 1976 when he ceased payments; as of 27 July 1976, the date of the conveyance in question, Billy Tuttle was $4,800 in arrears; in July 1976, Billy Tuttle individually owned a house and ten acres of land in Clemmons; on 27 July, he deeded

this property to himself and the new Mrs. Tuttle; the deed had no revenue stamps on it and was stamped "gift deed"; and the approximate value of the property was $85,000 - $90,000.

Defendants' evidence tended to show that: as of 27 July 1976, Billy Tuttle owed $4,800 to plaintiff, $7,500 to Northwestern Bank, and $19,000 to First Union National Bank, for a total of $31,300; as of the same date, he had funds in First Union amounting to $20,326.99, accounts at Northwestern of $736.83 and $8,280.54, and $5,160.50 out-of-state for a total of $34,504.86; Shirley Tuttle had put approximately $12,000 into the property in question; and Shirley Tuttle did not know that her husband was in arrears in his payments to plaintiff and that he had other creditors.

The jury answered all issues in favor of plaintiff, and judgment was entered setting aside the conveyance. Defendants appeal.

*White & Crumpler, by Fred G. Crumpler, Jr., G. Edgar Parker, David R. Tanis, and R. E. Shea, for plaintiff appellee.*

*Moore & Keith, by Thomas W. Moore, Jr., for defendant appellants.*

ERWIN, Judge.

Defendants present five questions on this appeal, and after carefully considering all of them, we find no error in the trial below.

[1] The first contention is that the trial court erred in denying defendants' motions for directed verdicts at the close of all the evidence. On a motion by a defendant for a directed verdict pursuant to G.S. 1A-1, Rule 50(a), testing the legal sufficiency of the evidence to take the case to the jury and to support a verdict for plaintiff, plaintiff's evidence must be taken as true and considered in the light most favorable to plaintiff. *Farmer v. Chaney*, 292 N.C. 451, 233 S.E. 2d 582 (1977); *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977).

As to defendant Billy Tuttle, we note that he testified that as of 27 July 1976, he owed plaintiff $4,800, Northwestern Bank $7,500, and First Union National Bank $19,000 for a total of $31,300. While the figures might be taken to indicate that defend-

ant Billy Tuttle's assets at the time apparently exceeded the indebtedness, he testified that "I consider everything I've done as partnership with Shirley [defendant Shirley D. Tuttle] . . . . Everything that we made at Country Music Bar was half Shirley's and half mine. . . . I made the statement earlier that everything I had was half Shirley's." Further, there was evidence tending to show that he had $20,000 in judgments against him. Thus, the jury could have found that defendant Billy Tuttle failed to retain sufficient assets to pay his then existing indebtedness. If a conveyance is voluntary, and the grantor fails to retain sufficient assets to pay his then existing indebtedness, such conveyance is invalid as to creditors. *Everett v. Gainer*, 269 N.C. 528, 153 S.E. 2d 90 (1967); *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914).

[2]  Defendants contend that the conveyance was for a good and valuable consideration. We conclude, however, that there was sufficient evidence tending to show that the conveyance was voluntary to present a jury question. We note that the deed has no excise stamps affixed thereto, and the recited consideration is "Ten Dollars and other valuable considerations." Justice Branch, speaking for our Supreme Court in *Everett v. Gainer, supra* at 532, 153 S.E. 2d at 94:

> "In the case before us it is apparent that if the sole consideration is $100, this is a grossly inadequate consideration, which would constitute the conveyance voluntary. Does the addition of the words 'and other valuable consideration' make the conveyance valid as to then existing creditors? We think not."

As to the issue of internal revenue stamps, the Court held:

> "[T]he amount of internal revenue stamps, or the absence of internal revenue stamps, is some evidence of the amount of consideration actually paid for the conveyance. In the instant case the recital in the deed of $100 and other valuable consideration considered with the absence of internal revenue stamps is evidence that the consideration was not more than $100." 269 N.C. at 533, 153 S.E. 2d at 95.

Defendants maintain that the evidence shows that the conveyance was for a valuable consideration in that there was testimony that Shirley Tuttle contributed $12,000 toward the completion of the house, made mortgage payments thereon, and

assumed the indebtedness owing on the property. We note, however, that no accounting of the $12,000 was given, that defendant Billy Tuttle did not know whether this sum came from his wife's salary or from their business, the Country Music Bar, and that Billy Tuttle testified as follows:

> "I didn't apply any money that she gave me toward my loans. It was used for current day-to-day expenses and all of the money that she gave me did not go into the house. I can't explain how much of the money went into the house, but she did borrow some money on several occasions."

The jury answered issues finding that defendant Billy Tuttle failed to retain sufficient assets to pay his then existing debts and that the conveyance was not for valuable consideration. The evidence was sufficient to submit such issues to the jury and to support its verdict.

The third issue called upon the jury to determine whether defendant Billy Tuttle executed the deed "with intent to delay and hinder or to defraud his creditors." The jury answered the issue in plaintiff's favor. Again, we find the evidence sufficient to submit this issue to the jury and support its verdict. See *Everett v. Gainer, supra; Sills v. Morgan*, 217 N.C. 662, 9 S.E. 2d 518 (1940).

[3]  As to defendant Shirley Tuttle, the trial court likewise properly refused to grant her motion for a directed verdict. Defendant Billy Tuttle testified for plaintiff as follows:

> "At the time of my marriage to Shirley Tuttle, she knew of my previous marriage to Jenny Tuttle and knew about the separation agreement. She knew that I had an obligation under the agreement and how much I was supposed to pay. She knew I was behind and she knew about the lawsuit."

This, coupled with the relationship between defendants and the evidence that the conveyance was voluntary, was sufficient evidence to submit the case to the jury as to defendant Shirley Tuttle. See *Everett v. Gainer, supra; Bank v. Pack*, 178 N.C. 388, 100 S.E. 615 (1919).

Defendants next argue that the trial court erred in failing to instruct the jury on: G.S. 39-15 *et seq.* and the law applicable to

voluntary conveyances; the definitions of various terms such as "voluntary conveyance" and "hinder, delay or defraud creditors"; and circumstantial evidence and its meaning.

Under G.S. 1A-1, Rule 51(a), the judge "shall declare and explain the law arising on the evidence given in the case." The trial court is not required, however, to read to the jury technical statutory language. *Cowan v. Transfer Co.* and *Carr v. Transfer Co.*, 262 N.C. 550, 138 S.E. 2d 228 (1964). Our examination of the charge has led us to the conclusion that the trial court adequately explained to the jury the law of fraudulent conveyances, relating it to the evidence in the case.

[4] Nor do we see error in the court's instructions on the various terms which defendants assert the trial judge failed to define adequately. Our Supreme Court has defined the term "voluntary conveyance" as follows in *Gas Co. v. Leggett*, 273 N.C. 547, 549, 161 S.E. 2d 23, 25 (1968): "A conveyance is voluntary when it is not for value, *i.e.*, when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud." (Citations omitted.) That portion of the trial court's charge pertaining to lack of consideration, "that is, if the grantee, or person receiving the conveyance, gave nothing of value for it," appears more favorable to defendants.

Considering the charge contextually as a whole, as we must do, we conclude that it presented the law of the case in such a manner as to avoid misleading or misinforming the jury and find no error sufficiently prejudicial to warrant a new trial. *See Gregory v. Lynch*, 271 N.C. 198, 155 S.E. 2d 488 (1967).

[5] Defendants next contend that the trial court erred in instructing the jury that the burden of proof was upon defendants to show valuable consideration. A pertinent portion of the instructions reads as follows:

"So, the burden of proof on this issue will be placed upon the plaintiff or the defendant depending on how you answer the first issue. If you answer the first issue 'Yes,' finding that Billy Tuttle retained sufficient other property to pay his debts, the burden of proof on this issue would be on the plaintiff, Jenny Tuttle. If you answer the first issue 'No,' finding that Billy Tuttle did not retain sufficient other prop-

erty to pay his debts, then the burden of proof would be upon the defendants to show that valuable consideration was given for the conveyance."

Our Supreme Court held in *Peeler v. Peeler*, 109 N.C. 628, 631, 14 S.E. 59, 61 (1891):

"Where an insolvent husband has conveyed land to his wife, and a preexisting creditor brings an action to impeach the deed for fraud, the *onus* is upon her to show that a consideration actually passed . . . To this extent she is required to assume a burden not placed upon other grantees."

*See also Everett v. Gainer, supra; Eddleman v. Lentz,* 158 N.C. 65, 72 S.E. 1011 (1911). The trial court properly instructed the jury as to the shifting burden of proof.

[6]  Defendants' fourth argument is that the trial court erred in overruling their objection to a question asked of plaintiff, "How much does he [defendant Billy Tuttle] owe you at this time?" Defendants maintain that the issue at trial was the amount of debts of defendant Billy Tuttle on 27 July 1976, the date of the conveyance, not at the time of trial, and that such testimony served to inflame the jury. We see no prejudicial error. Plaintiff testified, without objection, that she obtained a consent judgment against defendant Billy Tuttle for arrearages of $9,400 on 10 November 1976, three and one-half months after the conveyance. The consent judgment was received into evidence without objection. Defendant Billy Tuttle admitted the entry of the consent judgment, again with no objection being made. "It is well settled that exception to the admission of evidence will not be sustained when evidence of like import has theretofore been, or is thereafter, introduced without objection. *Glace v. Pilot Mountain,* 265 N.C. 181, 143 S.E. 2d 78 (1965)." *Gaddy v. Bank,* 25 N.C. App. 169, 173, 212 S.E. 2d 561, 564 (1975).

[7]  The remaining argument of defendants is that the trial court erred in not admitting into evidence a certain exhibit and testimony relating thereto. The exhibit was an order of Judge Collier in the previous consent judgment matter ordering that certain bank accounts be transferred to the Forsyth County Sheriff's Department to be applied to judgments against defendant Billy Tuttle. Defendants assert that the bank accounts in-

volved were the same ones in which defendant Billy Tuttle had a balance of over $29,000 at the time of the conveyance. They contend, therefore, that this evidence was relevant to show that Billy Tuttle had property which could be reached by creditors for the satisfaction of his debts. We agree with plaintiff that the order, entered 6 December 1976, was too remote in time and would not have a logical tendency to prove that Billy Tuttle had property, several months before the order's entry, available to satisfy his debts. The issue was not whether defendant Billy Tuttle merely had property at the time of the conveyance, but whether he retained sufficient assets to pay his then existing indebtedness.

Accordingly, in the trial below, we find

No error.

Judges MORRIS and MITCHELL concur.